# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **O'RYAN MISSION, LP** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **THE TRAVELERS INDEMNITY** | § | |
| **COMPANY OF AMERICA** | § | |
| *Defendant.* | § | |

---

**INDEX OF DOCUMENTS ATTACHED TO NOTICE OF REMOVAL**

---

| No. | Date Filed or Entered | Document |
|-----|-----------------------|----------|
| A-1 | N/A | State Court Civil Docket Sheet |
| A-2 | 02/24/2021 | Discovery Control Plan (Petition) |
| A-3 | 03/01/2021 | Citation by Certified Mail |
| A-4 | 03/11/2021 | Certified Mail Return Receipt |
| A-5 | 03/18/2021 | Plaintiff's Petition for Appointment of Appraisal Umpire |
| A-6 | 03/22/2021 | Defendant's Original Answer to Plaintiff's Petition |
| A-7 | 03/30/2021 | Defendant's First Amended Answer to Plaintiff's Petition |

# Exhibit A-1

Details

## Case Information

B-21-02-0202-CV | O'Ryan Mission, LP vs. The Travelers Indemnity Company of America

Case Number
B-21-02-0202-CV

File Date
02/24/2021

Court
161st District Court

Case Type
Debt/Contract - Consumer/DTPA <
$250K

Judicial Officer
Low, Justin

Case Status
Filed

## Party

Plaintiff
O'Ryan Mission, LP

Active Attorneys ▾
Lead Attorney
HODGE, SHAUN W
Retained

Defendant
The Travelers Indemnity Company of America

Active Attorneys ▾
Lead Attorney
Lewis, William Lance
Retained

## Events and Hearings

02/24/2021 Original Petition (OCA) ▾

Comment
DISCOVERY CONTROL PLAN

03/01/2021 Citation ▾

Served
03/01/202111:54 AM

Comment
7019 1120 0000 6083 5380

03/11/2021 Service Returned Served - by Cert Mail (confirmed delivery)

03/18/2021 Petition ▾

Comment
FOR APPOINTMENT OF APPRAISAL UMPIRE

03/22/2021 ANSWER ▾

Comment
DEFENDANT'S ORIGINAL ANSWER TO PLAINTIFF'S PETITION

03/30/2021 AMENDED ANSWER ▾

Comment
TO PLAINTIFF'S PETITION

## Financial

O'Ryan Mission, LP

|  | | |
|---|---|---|
| Total Financial Assessment | | $450.00 |
| Total Payments and Credits | | $450.00 |

| 2/24/2021 | Transaction Assessment | | | $450.00 |
|---|---|---|---|---|
| 2/24/2021 | Payment | Receipt # 2021-001009-DC | O'Ryan Mission, LP | ($450.00) |

# Exhibit A-2

FILED FOR RECORD
Cause No.: B-21-02-0202-CV
Ector County - 161st District Court
Ector County, Texas
2/24/2021 3:10 PM
Clarissa Webster
District Clerk
By: Margarita Tercero, Deputy

Case No. B-21-02-0202-CV

| | | |
|---|---|---|
| O'RYAN MISSION, LP<br>*Plaintiff,* | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| v. | § | |
| | § | ECTOR COUNTY, TEXAS |
| | § | |
| THE TRAVELERS INDEMNITY | § | |
| COMPANY OF AMERICA | § | |
| *Defendant* | § | _____ JUDICIAL DISTRICT |
| | § | |

## DISCOVERY CONTROL PLAN

1.   Plaintiff intends discovery in this case be conducted under the provisions of Texas Rule of Civil Procedure 190.4 (Level 3), and request that the Court enter an appropriate scheduling order.

## PARTIES

2.   Plaintiff, O'RYAN MISSION, LP is a limited partnership based in Ector County and is represented by the Hodge Law Firm.

3.   Defendant, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, is a foreign insurance company registered with the Texas Department of Insurance engaging in the business of insurance in the State of Texas.   Defendant may be served with process by serving its registered agent, CORPORATION SERVICE COMPANY, 211 EAST 7TH STREET, SUITE 620, AUSTIN, TEXAS 78701.

## JURISDICTION AND VENUE

4.   The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court. Plaintiff is seeking monetary relief over $100,000.00 including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

1

5.   The Court has jurisdiction over Defendant because this Defendant engages in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.

6.   Venue is proper in Ector County, Texas, because the insured property at issue is situated in this county and the events giving rise to this lawsuit occurred in this county.

## FACTS

7.   Plaintiff is the owner of Texas insurance policy IH660-0105B950 (hereinafter the "Policy"), which was issued by Defendant.

8.   Plaintiff own the insured property, which is specifically located at 1 Mission Boulevard, Odessa, Texas (hereinafter the "Property").

9.   Defendant sold the Policy insuring the Property to Plaintiff.

10.   On or about June 14th, 2017, a wind/hailstorm caused extensive damage to the insured Property.

11.   Plaintiff submitted a claim to Defendant against the Policy for damages the Property sustained as a result of the storm event. Upon information and belief, Defendant assigned number DHZ5481 to the claim.

12.   Plaintiff asked that Defendant cover the cost of repairs to the Property, pursuant to the Policy.

13.   Defendant inspected the property and issued an insufficient payment in the amount of $0.00 to Plaintiff for the damages. Defendant, on multiple occasions failed to properly inspect the property and failed to properly scope the loss by intentionally ignoring areas of damage and turning a blind eye to the true extent of the loss.

14. Defendant set about to deny and/or underpay on properly covered damages. As a result of Defendant's unreasonable investigation of the claim, including not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation and thus denying adequate and sufficient payment to Plaintiff to repair the Property, Plaintiff's claim was improperly adjusted. The mishandling of Plaintiff's claim has also caused a delay in Plaintiff's ability to fully repair the Property, which has resulted in additional damages. To this date, Plaintiff have yet to receive the full payment to which they are entitled under the Policy.

15. As detailed in the paragraphs below, Defendant wrongfully denied Plaintiff's claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, Defendant underpaid some of Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation.

16. To date, Defendant continues to delay in the payment for the damages to the property. As such, Plaintiff have not been paid in full for the damages to the Property.

17. Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by the Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

18. Defendant misrepresented to Plaintiff that certain damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence.

3

Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(1).

19.    Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

20.    Defendant failed to explain to Plaintiff the reasons for their offer of an inadequate settlement.    Specifically, Defendant failed to offer Plaintiff adequate compensation, without any or adequate explanation why full payment was not being made.    Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any or adequate explanation for the failure to adequately settle Plaintiff's claim.    Defendant's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

21.    Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant.    Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.    TEX. INS. CODE §541.060(a)(4).

22.    Defendant refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Specifically, Defendant performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.    Defendant's conduct

4

constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

23.     Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

24.     Defendant failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

25.     Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff have not received full payment for the claim. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

26.     From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

27. Defendant knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

28. As a result of Defendant's wrongful acts and omissions, Plaintiff were forced to retain the professional services of the attorney and law firm for representation with respect to these causes of action.

## CAUSES OF ACTION

29. Defendant is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and Deceptive Trade Practices Act, intentional breach of the common law duty of good faith and fair dealing, and common law fraud.

## BREACH OF CONTRACT

30. The Policy is a valid, binding, and enforceable contract between Plaintiff and Defendant.

31. Defendant's conduct constitutes a breach of the insurance contract made between Defendant and Plaintiffs.

32. Defendant's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant's insurance contract with Plaintiffs.

33. The Defendant's breach proximately caused Plaintiff's injuries and damages.

34. All conditions precedent required under the Policy have been performed, excused, waived, or otherwise satisfied by the Plaintiff.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:

## UNFAIR SETTLEMENT PRACTICES

6

35.     Defendant's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

36.     Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

37.     Defendant's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

38.     Defendant's unfair settlement practices, as described above, of failing to promptly provide the Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

39.     Defendant's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

40.     Defendant's unfair settlement practices, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

**41.**     Each of the foregoing unfair settlement practices were completed knowingly by the Defendant and were a producing cause of Plaintiff's injuries and damages.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

42.     The Claim is a claim under an insurance policy with the Defendant of which Plaintiff gave proper notice. The Defendant is liable for the Claim. Defendant's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

43.     Defendant's failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and/or request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

44.     Defendant's failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

45.     Defendant's delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

8

46.    Each of the foregoing unfair settlement practices were completed knowingly by the Defendant and were a producing cause of Plaintiff's injuries and damages.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.    The Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that liability was reasonably clear.

48.    Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

49.    Defendant's conduct proximately caused Plaintiff injuries and damages.

### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

50.    Defendant's conduct violated the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.41, et seq. (hereinafter the "DTPA") by engaging in "false, misleading or deceptive acts and practices."

51.    Plaintiff is "consumer[s]" in that Plaintiff acquired goods and/or services by purchase, and the goods and/or services form the basis of this action.

52.    The Defendant committed numerous violations of the Texas DTPA, insofar as Defendant:

    a)    Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

    b)    Represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

9

c)   Failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

d)   Generally engaged in unconscionable courses of action while handling the Claim; and/or

e)   Violated the provisions of the Texas Insurance Code described herein.

53.   The Defendant took advantage of the Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to the Plaintiff detriment.   The Defendant's acts also resulted in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration.   As a result of the Defendant's violations of the DTPA, Plaintiff suffered actual damages.   In addition, the Defendant committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times Plaintiff's damages for economic relief.

## COMMON LAW FRAUD

54.   Defendant is liable to Plaintiff for common law fraud.

55.   Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiff would not have acted as they did, and which Defendant knew were false or made recklessly without any knowledge of their truth as a positive assertion.

56.   The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiff to suffer injury and constituting common law fraud.

57.   The Defendant knowingly or recklessly made false representations as to material facts and/or knowingly concealed all or part of material information from Plaintiff with the intent of inducing Plaintiff to accept a denial and/or underpayment of insurance benefits. The Defendant allowed Plaintiff to use this information, or lack thereof, in justifiable reliance in accepting the denial and/or underpayment. Plaintiff relied upon said statements in accepting the denial and/or underpayment of the Claim and suffered injury as a result.

## DAMAGES

58.   Upon the trial of this case, it shall be shown Plaintiff sustained damages as a result of Defendant's conduct. Plaintiff respectfully request the Court and jury award the amount of loss Plaintiff have incurred in the past and will incur in the future. There are certain elements of damages to be considered separately and individually for the purpose of determining the sum of money that would fairly and reasonably compensate Plaintiff for injuries, damages, and losses, incurred and to be incurred. From the date of the occurrence in question until the time of trial of this cause, Plaintiff seek every element of damage allowed by Texas law with respect to the causes of action mentioned above, including but not limited to Plaintiff's actual damages, policy benefits, pre-judgment interest, post-judgment interest, consequential damages, court costs, attorneys' fees, treble damages, statutory interest, and exemplary damages.

59.   Plaintiff would show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

11

60.    The damages caused by hail and/or wind have not been properly addressed or repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiffs.   These damages are a direct result of Defendant's mishandling of Plaintiff's claim in violation of the laws set forth above.

61.    For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees and pre-judgment interest.

62.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees.   For knowing conduct of the acts described above, Plaintiff ask for three times actual damages.   TEX. INS. CODE §541.152.

63.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the claim amount, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees.   TEX. INS. CODE §542.060.

64.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

65.    For violations of the Deceptive Trade Practices Act, Plaintiff is entitled to recover actual damages and up to three times Plaintiff's damages for economic relief, along with attorney's fees, interest and court costs.

66. For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

67. For the prosecution and collection of this claim, Plaintiff have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

68. Plaintiff is not making any claims for relief under federal law.

## JURY DEMAND

69. Plaintiff request a jury trial and have tendered any and all requisite fees for such along with the filing of this *Plaintiff's Original Petition.*

## REQUEST FOR DISCLOSURE

70. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within fifty (50) days of service of this request, the information described in Rule 194.2(a)-(l).

## PETITION FOR APPOINTMENT
## OF APPRAISAL UMPIRE

Pursuant to the terms of the Policy, Plaintiff hereby request an order of this Court setting this matter for a hearing to appoint a neutral and qualified third-party to act as an umpire for an appraisal of damage to the roof of the Plaintiff's property to be performed in accordance with the terms of the Policy, Plaintiff respectfully requests that the Court select an umpire who resides in the State of Texas where the subject property is located. Specifically, Plaintiff requests that

13

this Court set this matter for a hearing and that this Court select one of the following to serve as

a third-party umpire:

> Scott Link
> 4900 Fourance Place, Suite 274
> Bellaire, TX 77401
> (713)-225-1118

> William McLeod
> 2950 Unity Dr., #571461
> Houston, TX 77257
> (281)-788-8110

> Eric William Carter
> 4900 Fournace Place, Suite 560
> Bellaire, TX 77401
> (713)-227-0042

In support of this Petition, Plaintiff would show this Court as follows:

a. Defendant issued Policy No. IH660-0105B950 (the "Policy") to the Plaintiff.

b. The Policy had effective dates from November 22nd, 2016 to November 22nd, 2017.

c. The Policy contains an Appraisal Provision which provides as follows:

> **"If we and you disagree on the value of the property or on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that a selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.**
>
> **Each party will:**
> **a. Pay its chosen appraiser; and**
> **b. Bear the other expenses of the appraisal and umpire equally."**

(Exhibit "1", Section G(1))

14

d. Parties have thus far been unable to reconcile the differing conclusions of their respective investigations. Parties elected to proceed with the appraisal process under the Policy.

e. Parties designated their impartial appraisers, but the appraisers for each side have not been able to agree on a third, impartial umpire despite their best efforts.

f. Pursuant to the authority provided by Tex. Ins. Code §5.4211 and the terms of the appraisal clause in the Policy, this Court is vested with the authority to select an umpire, after notice of hearing.

g. Accordingly, a justiciable controversy is pending between the Parties regarding the selection of an umpire for the appraisal of the Property at 1 Mission Boulevard, Odessa, TX 79768, which may properly be resolved by this Court through the power and jurisdiction granted Texas law and the Policy.

## PRAYER

WHEREFORE, Plaintiff respectfully request that final judgment be rendered for the Plaintiff as follows:

1) Judgment against Defendant for actual damages in an amount to be determined by the jury;

2) Statutory benefits;

3) Treble damages;

4) Exemplary and punitive damages;

5) Pre-judgment interest as provided by law;

6) Post-judgment interest as provided by law;

7) Attorneys' fees;

8) Costs of suit;

9) This Court set this matter for a hearing, at which time, and upon notice required by law to the Respondents, this Court may select an impartial appraiser from the list set forth above.

10) Such other and further relief to which Plaintiff may be justly entitled.

[Signature Page to Follow]

16

Respectfully submitted,

By: _____

    Shaun W. Hodge
    Texas Bar No. 24052995
    **HODGE LAW FIRM, PLLC**
    Old Galveston Square
    2211 The Strand, Suite 302
    Galveston, Texas 77550
    Telephone: (409) 762-5000
    Facsimile: (409) 763-2300
    Email: shodge@hodgefirm.com
    **ATTORNEY FOR PETITIONER**

17

'EXHIBIT A

**LAW OFFICE OF SCOTT LINK**
A PROFESSIONAL LIMITED LIABILITY CORPORATION
4900 FOURNACE PLACE, SUITE 274
BELLAIRE, TX 77401

SCOTT LINK
FORMER STATE DISTRICT JUDGE
BOARD CERTIFIED – PERSONAL INJURY
TRIAL LAW AND CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

www. scottlinklaw.com
www.linkmediations.com
TELEPHONE: (713) 225-1118
FACSIMILE: (713) 481-1713
EMAIL: slinklaw@gmail.com

### Scott Link Résumé

Scott Link is the former Judge of the 80th State District Court where he was the Master Judge for Asbestos, Silicosis, Breast Implant, and BFI waste site Litigation. Scott was the head of the Board of District Judges for Mass tort litigation for several years and was named the Texas Civil Trial and Appellate Specialist "Trial Judge of the Year" in 1997.

While serving as Judge, Scott was an adjunct professor at South Texas College of law teaching Civil Trial Advocacy between 1996-1999. During the course of his tenure as Judge, Scott presided over 425 jury trials to a verdict ranging from oil and gas litigation, mass torts, contract disputes, commercial litigation, legal malpractice, medical malpractice, and personal injury litigation.

Scott became Board Certified in Personal Injury Litigation and Civil Trial Litigation in 1988 and was elected to the American Board Trial Advocates in 2003.

Scott's current practice focuses on multiparty, complex commercial litigation, legal malpractice defense, medical malpractice, personal injury, and alternative dispute resolution. He is the owner of Link Mediations and is an arbitrator for Complex Commercial Litigation, Labor and Employment, Construction Law, and Consumer Law Panels with the American Arbitration Association.

Scott also writes, lectures, and testifies in the area of legal malpractice, attorney's breach of fiduciary duty, recovering attorneys' fees, and the duties of the guardian ad litem.

**Professional Affiliations:**

- United States Court of Claim
- United States District Court, Southern District of Texas
- United States District Court, Western District of Texas
- United States District Court, Eastern District of Texas
- United States District Court, Northern District of Texas
- State Bar of Texas Pattern Jury Charge Committee Chair
- HBA Special Olympics Committee
- Texas Supreme Court Unauthorized Practice of Law committee
- State Bar of Texas Litigation Section

**Honors & Distinctions:**

- Texas Trial and Appellate Specialists' "Trial Judge of the Year", 1997
- Master Asbestos Judge for Harris County, Texas, 1995-2002
- Master Silicosis Judge for *The Board of District Judges*, 1999-2000
- Chairman; *Mass Tort Committee for the Board of District Judges*, 1997-2000
- Co-Chair; *Board of District Judges Breast Implant Committee*, 1998-2000
- Master Judge for BFI Litigation (176 contaminated sites in 27 states and Puerto Rico)
- Elected to the American Board of Trial Advocates, 2003
- "AV Preeminent" rated by Martindale – Hubbell
- Member of "Best Lawyers in Houston"
- Elected to "Super Lawyers"

**Publications & Speeches:**

Scott has published numerous articles and lectured in the areas of legal malpractice, products liability, attorneys' fees, mass torts, challenges to experts, tort reform, attorney breach of fiduciary duty, evidence, trial techniques, jury charge, the role of the ad litem, and obtaining injunctive relief.

**Publications in the Previous 7 Years:**

- "Does One Size Fit All – Breach of Fiduciary Pattern Jury Questions" by Scott Link & Mike Eady; *The Advocate*, Fall issue 2014,
- "10 Things You Should Know to Recover Attorneys' Fees in Texas;" HBA Seminar, 2013
- "10 Things All Attorneys Should Know About Legal Malpractice and How to Avoid Getting Sued;" HBA Seminar, 2013
- "Legal Malpractice and the Law of Barratry in Texas;" HBA Luncheon Seminar, 2010.
- Co-Author with Mike Eady, the comment section of the PJC Malpractice volume: *Breach of Fiduciary Duty*
- "Attorney's Fees Loses its Appeal;" *Houston Lawyer Magazine,* 2016
- "The Do's and Don'ts of a Guardian Ad Litem;" *Houston Lawyer Magazine,* 2017
- "The Question and Comment on Attorney's Breach of Fiduciary Duty" by Scott Link and Mike Eady for the 2018 PJC Malpractice Volume*
- Member of select committee to compose an Attorneys' Fees Submission to be used in all Pattern Jury Charge volumes.

**Expert Witness:**

- Expert witness on attorneys' fees for numerous firms, including some of Houston's largest firms.
- Expert witness in legal malpractice and breach of fiduciary duty.

*Reviewed and modified by a subcommittee of representatives from each of the PJC volumes. Scott Link and Mike Eady represented the Malpractice Volume.

# EXHIBIT B

*HONORABLE WILLIAM "BILL" MCLEOD*          *bill@lawmcleod.com*
2950 Unity Dr, #571461, Houston, Texas 77257
281.788.8110 / 713.227.6300
*February 2021*

## PROFILE

*Texas Department of Insurance* has placed me on their roster of Appraisal Umpires. With over eighteen (19) years of legal experience, former judge in Harris County Texas, certified alternative dispute resolution mediator, over fifteen (15) years' experience as a general contractor, specializing in the replacement of roofs and interior repairs. I am the "UMPIRE" that can be counted on to resolve the difficult appraisals. Currently serving as a special commissioner on real property claims across Harris County, Texas. Former licensed real estate agent. My diverse background and combined experience provide a unique and valuable skill set to allow me to continue the work I am currently involved in as an Umpire in the Appraisal Process.

## SUMMARY OF QUALIFICATIONS

Dedicated, extensive legal knowledge, analytical thinker, acute observational skills, self-motivated, energetic, outstanding upright character:

- Working knowledge and understanding of the tools used by Appraisers for the development of their appraisal position statements. (i.e. Xactimate made by Xactware; Hail Trace; Hail Facts address-specific hail report; Wind Facts address-specific wind report; and other estimating tools used by the industry).
- Continually updating the newest case law relating to the appraisal process.
- I will travel anywhere in the United States.
- Outstanding interpersonal and communication skills.

### Bar Memberships, Organizations, Certifications

*Bar Memberships:*   Admitted in 2002: Texas State Bar Association, Houston Bar Association, United States District Court for the Southern District of Texas.

*Organizations:*  Insurance Appraisal and Umpire Association Inc., Current Associate Membership; Current member of Phi Alpha Delta Law Fraternity, International – received certificate for outstanding contribution to the Barbara C. Jordan Chapter; past member of Chi Sigma Iota, an international honors society – qualification of membership, 3.5 GPA average must be maintained at the Masters Graduate Level; member of the Executive Board Class of 2001; President of TSU Tax Society.

*Certifications:*  Certified Alternative Dispute Resolution Mediator.

## EMPLOYMENT/LEGAL EXPERIENCE

### LAW OFFICE OF WILLIAM D. MCLEOD, HOUSTON, TX

*SOLE PRACTITIONER*

- Manage all aspects of legal cases from inception through completion, maintain close relationship with clients and build repeat business, (over five-hundred and fifty cases);
- Represent clients in legal matters including contract matters, insurance disputes, employee-employer disputes, personal injury, and deceptive trade practices;
- Court appointed mediator and by agreement of the opposing parties;
- Court appointed Guardian and Attorney Ad Item;

- Court appointed Special Commissioner (assess damages of property owners and consider evidence on property value; and
- Court appointed Umpire and by agreement of the parties across Texas

## HARRIS COUNTY CIVIL COURT AT LAW NUMBER FOUR (4)
*FORMER JUDGE*
- Preside over court motion dockets, and jury and bench trials;
- Informed jurors about the duties and laws applicable in each trial;
- Participated in judgeship training; and
- Followed the law in making rulings on motions, special hearings, in jury and bench trials, assuring the law was followed and carried out in every case that came before me.

## LAW OFFICE OF HARRY C. ARTHUR, HOUSTON, TX
*ASSOCIATE ATTORNEY, CORPORATE AND DECEPTIVE TRADE PRACTICE ACT DEPARTMENT*
- Held primary responsibility on going cases for approximately 50 clients;
- Represented a diverse group of clients in various civil litigation matters;
- Developed trial strategy based on client needs and recommendations;
- Litigated each case in full;
- Prepared selected civil litigation issues for trial and tried the case for the firm;
- Prepared and argued motions; and
- Drafted settlement conference briefs.

## WAUSON & ASSOCIATES, SUGAR LAND, TX
*ASSOCIATE ATTORNEY, CONSUMER LITIGATION DEPARTMENT*
- Interviewed prospective clients and assisted in the resolution of legal issues;
- Assisted in trial preparation, court filings, litigation document production and records management; and
- Researched and wrote briefs and motions for ongoing civil litigation.

## 333RD HARRIS COUNTY CIVIL DISTRICT COURT, HOUSTON, TX
*LAW CLERK*
- Drafted legal memoranda: organize and synthesize information, write clearly and accurately, explain facts precisely, analyze issues, apply precedent to new fact situations, write objectively or persuasively, edit, cite check and proofread;
- Developed trial brief information, conducted research on issues and motions for the Court;
- Maintained the working files of all cases on the weekly docket; and
- Communicated regularly with judges, judicial clerks and trial attorneys.

## MCLEOD CONTRACTING, DALLAS, TX
*SOLE PROPRIETOR*
- Implemented all Federal and State regulations and City codes regarding employee and job completion procedures;

- Developed and managed all aspects of operations, marketing, sales and accounting, while controlling expenses;
- Consistently exceeded monthly sales objectives;
- Prospected and developed new accounts; and
- Specialized in roof replacements and interior repairs.

## EDUCATIONAL BACKGROUND

**J.D., Doctor of Jurisprudence**
TEXAS SOUTHERN UNIVERSITY

**M.S., Masters of Science**
TEXAS A&M UNIVERSITY

**B.A., Business Administration**
TEXAS A&M UNIVERSITY

Thanks again for the opportunity to service,

*With Gratitude,*

*Hon. William "Bill" McLeod*

------------------------------------
Honorable Willliam McLeod
SBN: 24034567

# EXHIBIT C

## JUDGE ERIC WILLIAM CARTER



4900 Fournace Place, Suite 560
Bellaire, Texas 77401
Telephone: (713) 227-0042
Facsimile: (713) 227-7001
E-mail: info@ericwilliamcarter.com
Website: www.ericwilliamcarter.com

### Profile:

Eric William Carter graduated from law school at the age of 24. He began his legal career working in the administrative law field, trying hundreds of Medical Fee Dispute Resolution cases before the State Office of Administrative Hearings in Austin, Texas. Since that time, his focus has remained on the Carter Law Firm's litigation docket, preparing and pursuing the Firm's cases for trial before various courts in Texas. Working primarily for families and small-to-midsized businesses, his experience includes representing both Plaintiffs and Defendants. In addition to his civil litigation practice, Eric has also gained extensive experience through his appointments as Guardian Ad Litem, an agent of the Courts assigned to work for the benefit of particular minor children in Harris County. Eric was first elected as Harris County Justice of the Peace for Precinct 1, Place 1 in 2016. Eric is fluent in both English and Spanish.

### Education:

**Juris Doctorate Degree (J.D.)**
- South Texas College of Law, Houston, Texas          **2004-2006**
- Licensed to Practice Law in Texas (2007)
- Licensed to Practice Law in the United States District Court for the Southern District of Texas (2008)

**Bachelor's Degree (B.A.)**
- University of Texas, Austin, Texas          **2001-2004**
- Majored in Government/Political Science
- Studied abroad at Oxford University, Oxford England

### Experience:

**Harris County Justice of the Peace – Precinct 1, Place 1**          **2017-Present**
Houston, Harris County, Texas
Presiding Judge of all Harris County Justices of the Peace          **2020**

**The Carter Law Firm**                                            **2007-Present**
Houston, Texas
Attorney at Law

- Handled all forms of pre-litigation and trial matters in various business and commercial litigation cases, involving the following areas of law: business transactions, fraud and negligence actions, contractual disputes, personal and business torts, Federal SEC regulations and corporate compliance, real estate transactions, landlord/tenant actions, estate planning, and more.
- Drafted variety of pleadings and papers, and undertook extensive, document intensive discovery and depositions. Experience includes extensive trial and appellate work.

**Texas House of Representatives**                                 **(2002-2004)**
Austin, Texas
Legislative Aide to former-Representative Kevin Bailey
- Performed various administrative duties, attended meetings, drafted correspondence, handled scheduling for Representative, researched issues of law and assisted in preparing for discussions before the House.

**Texas House Committee on General Investigations and Ethics  (2003-2004)**
Austin, Texas
Legislative Aide to Committee
- Performed various administrative duties, attended meetings, drafted correspondence, handled scheduling for Representative, researched issues of law and assisted in preparing for discussions before the House.

## Professional Affiliations & Accomplishments:

Member, State Bar of Texas
Member, State Bar College
Member, Justice of the Peace Section, State Bar of Texas
Guardian Ad Litem and Attorney Ad Litem Appointments in the United States District
   Court for the Southern District of Texas, as well as numerous Judicial District
   Courts of Harris County, Texas (2008-present)
Member, Texas Trial Lawyers Association
Member, Houston Trial Lawyers Association
Member, Houston Bar Association
Member, Mexican American Bar Association of Houston
Member, South Asian Bar Association
Member, Hispanic Bar Association of Houston
Member, Houston GLBT Political Caucus
Member, Harris County Democratic Lawyer's Association
Member, Harris County Young Democrats
Member, Oak Forest Area Democrats
Member, Harris County Democratic Party
Endowed Member, Free and Accepted Masons, Houston Lodge #1189

Endowed Member, Scottish Rite of Freemasonry, Southern Jurisdiction
Member, Houston Area Shriners, Arabia Shrine
Board of Directors, Suzan O. Carter Ministries
Board of Directors, Judges at Work in Schools ("JAWS")
Former Member, Board of Directors, Wesley Community Center

7019 1120 0000 6083 5380



neopost
03/01/2021          FIRST-CLASS MAIL
US POSTAGE  $014.40⁰

ZIP 79761
041L12205090



OFFICE OF

# CLARISSA WEBSTER

DISTRICT CLERK
ECTOR COUNTY COURTHOUSE
300 NORTH GRANT AVE., ROOM 301
ODESSA, TEXAS 79761-5158

## TO:

*(B-21-02-0202-CV)*
The Travelers Indemnity Company of America
Registered Agent Corporation Service Company
211 East 7th Street, Suite 620
Austin, TX  78701

# Exhibit A-3

# THE STATE OF TEXAS

## CITATION BY CERTIFIED MAIL

O'RYAN MISSION, LP VS. THE TRAVELERS
INDEMNITY COMPANY OF AMERICA

CAUSE NO. B-21-02-0202-CV
IN THE 161ST DISTRICT COURT
OF
ECTOR COUNTY, TEXAS

TO:  **THE TRAVELERS INDEMNITY COMPANY OF AMERICA,**
DEFENDANT - GREETINGS

**NOTICE TO DEFENDANT: "You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00am on the Monday next following the expiration of 20 days after the date you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

You are hereby commanded to appear by filing a written answer to the Plaintiff's Petition at or before 10:00 o'clock a.m. on the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable Justin Low of Ector County, Texas at the Courthouse in said County in Odessa, Texas.

**Said Plaintiff's DISCOVERY CONTROL PLAN was filed in said court on February 24, 2021 in the above entitled cause.**

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's DISCOVERY CONTROL PLAN accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Odessa Texas on this the 1st day of March, 2021.

Attorney for Plaintiff:
SHAUN W HODGE
OLD GALVESTON SQUARE
2211 THE STRAND, SUITE 202
GALVESTON, TX  77550

CLARISSA WEBSTER, CLERK
161st District Court
ECTOR COUNTY, TEXAS

Signed: 3/1/2021 10:19:53 AM

BY: _Margarita Tercero_
Margarita Tercero, Deputy

**NOTICE:**  This constitutes service by certified mail, as allowed by
RULE 106(a)(2) of the TEXAS RULE OF CIVIL PROCEDURE.

**ATTACH RETURN RECEIPTS WITH**

*ADDRESSEE´S SIGNATURE*

RULE 106(A)(2) THE CITATION SHALL
BE SERVED BY MAILING TO THE
DEFENDANT BY _____ CERTIFIED MAIL
_____RETURN RECEIPT REQUESTED, A
TRUE COPY OF THE CITATION.
SEC.17.027 RULE OF CIVIL PRACTICE
AND REMEDIES CODE IF NOT PREPARED
BY CLERK OF COURT.

**Sent to:**
**The Travelers Indemnity Company of**
**America**
**Registered Agent Corporation Service**
**Company**
**211 East 7th Street Suite 620**
**Austin TX  78701**

_____
_____, Deputy Clerk

300 North Grant Ave., Rm. 301
Odessa, TX  79761

*CERTIFICATE OF DELIVERY*
*BY MAIL*

I hereby certify that on the _____ day of

_____, 20_____

At _____ o'clock _____m., was delivered to

_____.
Defendant(s) by registered mail or certified mail,
with delivery restricted to addressee only, return
receipt requested, a true copy of this citation with
a copy of the petition attached thereto.

# Exhibit A-4

**FILED FOR RECORD**
Cause No.: **B-21-02-0202-CV**
Ector County, Texas
03/11/2021 2:56:20 PM
**Clarissa Webster**
**District Clerk**
By Deputy: Tercero, Margarita



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☑ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage
$  4.40

To  *(B-21-02-0202-CV)*
The Travelers Indemnity Company of America
Registered Agent Corporation Service Company
211 East 7th Street, Suite 620
Austin, TX  78701

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 1120 0000 6083 5380

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
*(B-21-02-0202-CV)*
The Travelers Indemnity Company of America
Registered Agent Corporation Service Company
211 East 7th Street, Suite 620
Austin, TX  78701

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 5305 9154 9848 41

7019 1120 0000 6083 5380

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☑ Agent
                             ☐ Addressee
B. Received by *(Printed Name)*    C. Date of Delivery
Samantha Guerra                    3-5-21

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053       Domestic Return Receipt

# USPS Tracking®

FAQs >

### Track Another Package  +

**Tracking Number:** 70191120000060835380                    Remove ✕

Your item was picked up at a postal facility at 11:26 am on March 4, 2021 in AUSTIN, TX 78701.

## ⊘ Delivered

March 4, 2021 at 11:26 am
Delivered, Individual Picked Up at Postal Facility
AUSTIN, TX 78701

Feedback

**Get Updates** ∨

Text & Email Updates                                            ∨

Tracking History                                                ∨

Product Information                                             ∨

See Less ∧

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

# Exhibit A-5

FILED FOR RECORD
Cause No.: B-21-02-0202-CV
Ector County - 161st District Court
Ector County, Texas
3/18/2021 10:08 AM
Clarissa Webster
District Clerk
By: Margarita Tercero, Deputy

**Case No. B-21-02-0202-CV**

| | | |
|---|---|---|
| O'RYAN MISSION, LP | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | ECTOR COUNTY, TEXAS |
| | § | |
| THE TRAVELERS INDEMNITY | § | |
| COMPANY OF AMERICA | § | |
| *Defendant* | § | 161ST JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S PETITION FOR APPOINTMENT
## OF APPRAISAL UMPIRE

Pursuant to the terms of the Policy, Plaintiff hereby request an order of this Court setting this matter for a hearing to appoint a neutral and qualified third-party to act as an umpire for an appraisal of damage to the roof of the Plaintiff's property to be performed in accordance with the terms of the Policy, Plaintiff respectfully requests that the Court select an umpire who resides in the State of Texas where the subject property is located. Specifically, Plaintiff requests that this Court set this matter for a hearing and that this Court select one of the following to serve as a third-party umpire:

Scott Link
4900 Fourance Place, Suite 274
Bellaire, TX 77401
(713)-225-1118

William McLeod
2950 Unity Dr., #571461
Houston, TX 77257
(281)-788-8110

Eric William Carter
4900 Fournace Place, Suite 560
Bellaire, TX 77401
(713)-227-0042

1

In support of this Petition, Plaintiff would show this Court as follows:

   a.  Defendant issued Policy No. IH660-0105B950 (the "Policy") to the Plaintiff.

   b.  The Policy had effective dates from November 22nd, 2016 to November 22nd, 2017.

   c.  The Policy contains an Appraisal Provision which provides as follows:

**"If we and you disagree on the value of the property or on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that a selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.**

**Each party will:**
**a.  Pay its chosen appraiser; and**
**b.  Bear the other expenses of the appraisal and umpire equally."**

(Exhibit "1", Section G(1))

   d.  Parties have thus far been unable to reconcile the differing conclusions of their respective investigations. Parties elected to proceed with the appraisal process under the Policy.

   e.  Parties designated their impartial appraisers, but the appraisers for each side have not been able to agree on a third, impartial umpire despite their best efforts.

   f.  Pursuant to the authority provided by Tex. Ins. Code §5.4211 and the terms of the appraisal clause in the Policy, this Court is vested with the authority to select an umpire, after notice of hearing.

   g.  Accordingly, a justiciable controversy is pending between the Parties regarding the selection of an umpire for the appraisal of the Property at 1 Mission Boulevard, Odessa, TX 79768, which may properly be resolved by this Court through the power and jurisdiction granted Texas law and the Policy.

2

## **PRAYER**

WHEREFORE, Plaintiff respectfully request that final judgment be rendered for the Plaintiff as follows:

1) This Court set this matter for a hearing, at which time, and upon notice required by law to the Respondents, this Court may select an impartial appraiser from the list set forth above.

2) Such other and further relief to which Plaintiff may be justly entitled.

[Signature Page to Follow]

3

Respectfully submitted,

By: _____

Shaun W. Hodge
Texas Bar No. 24052995
**HODGE LAW FIRM, PLLC**
Old Galveston Square
2211 The Strand, Suite 302
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300
Email: shodge@hodgefirm.com
**ATTORNEY FOR PETITIONER**

# Exhibit A-6

**FILED FOR RECORD**
**Cause No.: B-21-02-0202-CV**
Ector County - 161st District Court
Ector County, Texas
3/22/2021 9:07 AM
**Clarissa Webster**
**District Clerk**
By: DiAnn Espinoza, Deputy

## CAUSE NO. B-21-02-0202-CV

| | | |
|---|---|---|
| O'RYAN MISSION, LP, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | ECTOR COUNTY, TEXAS |
| THE TRAVELERS INDEMNITY | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| **Defendant.** | § | 161ST JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER TO PLAINTIFF'S PETITION

In response to Plaintiff's Original Petition (the "Petition"), Defendant The Travelers Indemnity Company of America ("Travelers" or "Defendant") files its Original Answer thereto.

## I.
## GENERAL DENIAL

Defendant denies all and singular the allegations contained in the Petition and demands strict proof thereof.

## II.
## ADDITIONAL DEFENSES

1.      Defendant denies that all conditions precedent to Plaintiff's claims for recovery have occurred or been met, and they have not been waived.

2.      Coverage is precluded to the extent that the loss occurred outside the policy period.

3.      Plaintiff's claims are barred by the Legal Action Against Us provision, pursuant to which limitations ran before suit was filed.

4.      Some or all of Plaintiff's claims are barred by the statute of limitations.

5.      Coverage is precluded to the extent Plaintiff seeks reimbursement for the replacement cost value of property which has not been repaired or replaced.

6.      Coverage is precluded to the extent the loss was not caused by a "Covered Cause of Loss"

7.      Plaintiff's claims are precluded in whole or in part by the exclusion for "[w]ear and tear."

8.      Plaintiff's claims may be precluded in whole or in part by the exclusion for "[r]ust, other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself."

9.      Coverage may be excluded in part by the Ordinance or Law exclusion.

10.     Plaintiff's claims may be precluded in whole or in part by the exclusion for "neglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss."

11.     Plaintiff's claims may be precluded in whole or in part by the exclusion for faulty, inadequate or defective: "(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance; of part or all of any property whether on or off the described premises."

12.     Plaintiff's claims may be precluded in whole or in part by the exclusion for "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."

13.     Coverage is precluded to the extent Plaintiff seeks reimbursement for Covered Property for more than the "least" of the following amounts: "(i) The Limit of Insurance applicable to the lost or damaged property; (ii) The cost to replace, on the same premises, the lost or damaged property with other property: a) Of comparable material and quality; and b) Used for the same

purpose; or (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property."

14.     Plaintiff's claims may be barred in whole or in part by the exclusion for "Settling, cracking, shrinking, bulging or expansion or pavements, foundations, walls, floors, roofs, ceilings, curbs, fences, retaining walls or swimming pools."

15.     Plaintiff's claims are precluded in whole or in part because the policy does not pay for loss of or damage to: "The 'interior of any building or structure' caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless: (1) The building or structure first sustains damaged by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters…"

16.     Plaintiff's claims may be barred in part by the exclusion for loss or damage "caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more."

17.     Plaintiff's claims may be barred in part by the exclusion for "Fungus", Wet Rot or Dry Rot.

18.     Some or all of Plaintiff's claims are excluded by breach of policy requirements and/or conditions in the Policy, including the insured's duties in the event of loss or damage, including but not limited to cooperating with Travelers in the investigation or settlement of the claim, taking all reasonable steps to protect the Covered Property from further damage, giving prompt notice of a loss, including a description of the property involved, giving a description of how, when and where the loss or damage occurred, and permitting Travelers to inspect the property proving the loss or damage as often as may reasonably be required.

19.     Plaintiff has failed to mitigate its damages.

20.     Plaintiff's claims are subject to the deductible of the insurance policy at issue, including but not limited to the 2% Windstorm or Hail Percentage Deductible, as well as the limits therein.

21.     All or a portion of Plaintiff's claims were caused by the negligence and/or comparative responsibility of Plaintiff, persons acting on Plaintiff's behalf and/or under Plaintiff's direction or control, and/or third parties over which Defendant had no control.

22.     Defendant is entitled to deny Plaintiff's claim if there is an appraisal.

23.     Defendant is entitled to a credit or offset for all amounts previously paid by any other insurer, including Travelers.

24.     Plaintiff has failed to state a claim.

25.     Plaintiff's punitive and exemplary damages claims are barred in whole or in part by the Due Process Clause and the Excessive Fines Clause of the United States Constitution, Chapter 41 of the Texas Civil Practice & Remedies Code, or any other applicable law.

### DEFENDANT'S ANSWER TO PLAINTIFF'S PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE

In response to Plaintiff's Petition for Appointment of Appraisal Umpire (the "Appraisal Petition"), Travelers files its Original Answer thereto.

### GENERAL DENIAL

Defendant denies all and singular the allegations contained in the Appraisal Petition and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Defendant The Travelers Indemnity Company of America prays that Plaintiff take nothing by this suit, and that Defendant goes hence and recovers costs on its behalf expended.

Respectfully submitted,

*/s/ Wm. Lance Lewis*
WM. LANCE LEWIS
Texas Bar No. 12314560
ALISSA PUCKETT
Texas Bar No. 24056886
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
apuckett@qslwm.com

**ATTORNEYS FOR DEFENDANT**


**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing pleading has been furnished to Plaintiff's counsel of record, via electronic mail, in accordance with the Texas Rules of Civil Procedure, this 22nd day of March 2021 at the address indicated below:

Shaun W. Hodge
Hodge Law Firm, PLLC
Old Galveston Square
2211 The Strand, Suite 302
Galveston, Texas 77550
shodge@hodgefirm.com


*/s/ Wm. Lance Lewis*
Wm. Lance Lewis /Alissa Puckett

# Exhibit A-7

**FILED FOR RECORD**
**Cause No.: B-21-02-0202-CV**
Ector County - 161st District Court
Ector County, Texas
3/30/2021 5:00 PM
**Clarissa Webster**
**District Clerk**
By: Ciria Yanez, Deputy

## CAUSE NO. B-21-02-0202-CV

| | | |
|---|---|---|
| O'RYAN MISSION, LP, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | ECTOR COUNTY, TEXAS |
| THE TRAVELERS INDEMNITY | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| **Defendant.** | § | 161ST JUDICIAL DISTRICT |

### DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S PETITION

In response to Plaintiff's Original Petition (the "Petition"), Defendant The Travelers Indemnity Company of America ("Travelers" or "Defendant") files its First Amended Answer thereto.

## I.
### GENERAL DENIAL

Defendant denies all and singular the allegations contained in the Petition and demands strict proof thereof.

## II.
### ADDITIONAL DEFENSES

1. Defendant denies that all conditions precedent to Plaintiff's claims for recovery have occurred or been met, and they have not been waived.

2. Coverage is precluded to the extent that the loss occurred outside the policy period.

3. Plaintiff's claims are barred by the Legal Action Against Us provision, pursuant to which limitations ran before suit was filed.

4. Some or all of Plaintiff's claims are barred by the statute of limitations.

5. Coverage is precluded to the extent Plaintiff seeks reimbursement for the replacement cost value of property which has not been repaired or replaced.

6.      Coverage is precluded to the extent the loss was not caused by a "Covered Cause of Loss"

7.      Plaintiff's claims are precluded in whole or in part by the exclusion for "[w]ear and tear."

8.      Plaintiff's claims may be precluded in whole or in part by the exclusion for "[r]ust, other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself."

9.      Coverage may be excluded in part by the Ordinance or Law exclusion.

10.     Plaintiff's claims may be precluded in whole or in part by the exclusion for "neglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss."

11.     Plaintiff's claims may be precluded in whole or in part by the exclusion for faulty, inadequate or defective: "(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance; of part or all of any property whether on or off the described premises."

12.     Plaintiff's claims may be precluded in whole or in part by the exclusion for "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."

13.     Coverage is precluded to the extent Plaintiff seeks reimbursement for Covered Property for more than the "least" of the following amounts: "(i) The Limit of Insurance applicable to the lost or damaged property; (ii) The cost to replace, on the same premises, the lost or damaged property with other property: a) Of comparable material and quality; and b) Used for the same

purpose; or (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property."

14.     Plaintiff's claims may be barred in whole or in part by the exclusion for "Settling, cracking, shrinking, bulging or expansion or pavements, foundations, walls, floors, roofs, ceilings, curbs, fences, retaining walls or swimming pools."

15.     Plaintiff's claims are precluded in whole or in part because the policy does not pay for loss of or damage to: "The 'interior of any building or structure' caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless: (1) The building or structure first sustains damaged by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters…"

16.     Plaintiff's claims may be barred in part by the exclusion for loss or damage "caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more."

17.     Plaintiff's claims may be barred in part by the exclusion for "Fungus", Wet Rot or Dry Rot.

18.     Some or all of Plaintiff's claims are excluded by breach of policy requirements and/or conditions in the Policy, including the insured's duties in the event of loss or damage, including but not limited to cooperating with Travelers in the investigation or settlement of the claim, taking all reasonable steps to protect the Covered Property from further damage, giving prompt notice of a loss, including a description of the property involved, giving a description of how, when and where the loss or damage occurred, and permitting Travelers to inspect the property proving the loss or damage as often as may reasonably be required.

19.     Plaintiff has failed to mitigate its damages.

20.     Plaintiff's claims are subject to the deductible of the insurance policy at issue, including but not limited to the 2% Windstorm or Hail Percentage Deductible, as well as the limits therein.

21.     All or a portion of Plaintiff's claims were caused by the negligence and/or comparative responsibility of Plaintiff, persons acting on Plaintiff's behalf and/or under Plaintiff's direction or control, and/or third parties over which Defendant had no control.

22.     Defendant is entitled to deny Plaintiff's claim if there is an appraisal.

23.     Defendant is entitled to a credit or offset for all amounts previously paid by any other insurer, including Travelers.

24.     Plaintiff has failed to state a claim.

25.     Plaintiff's claim for attorney's fees may be limited or extinguished by section 542A.007 of the Texas Insurance Code due to Plaintiff's failure to provide a pre-suit notice.

26.     Plaintiff's punitive and exemplary damages claims are barred in whole or in part by the Due Process Clause and the Excessive Fines Clause of the United States Constitution, Chapter 41 of the Texas Civil Practice & Remedies Code, or any other applicable law.

## DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE

In response to Plaintiff's Petition for Appointment of Appraisal Umpire (the "Appraisal Petition"), Travelers files its First Amended Answer to Plaintiff's Petition, wherein Plaintiff seeks appointment of an appraisal umpire, and would respectfully show this Court as follows:

1.     On or about April 15, 2020, Travelers appointed its appraiser in response to an appraisal demand from Plaintiff.

2.      Travelers agrees that under the terms of the applicable insurance policy, it is appropriate for the Court to appoint a neutral third-party as umpire as the appraisers have been unable to reach an agreement regarding the identity of an umpire within a reasonable timeframe.

3.      In the context of an appraisal, the umpire serves as a neutral party to resolve disputes regarding the amount of loss which cannot be agreed upon by the appraisers appointed by the respective parties. In this way, the umpire serves as a judge. Given this position, the impartiality of the umpire is key.

4.      Plaintiff has moved the Court to select one of three umpires to whom Travelers' appraiser did not agree. In part, this is because two of them, Scott Link and Eric William Carter, do not have a background in construction, which is necessary to render a fair decision in this matter because the damage involves a spray foam roof system, whether it was or is repairable, the proper method of repair if so, and the cost involved to repair or replace the spray foam roof if needed. Travelers' appraiser attempted to reach William McLeod to obtain more information regarding his qualifications, but McLeod failed to respond to that inquiry. Because Mr. McLeod was not responsive, Travelers' appraiser was not inclined to agree to use Mr. McLeod as umpire. The appraisal process has already been delayed by almost a year.

5.      In the event the Court is willing to designate an umpire that either side has previously proposed, Travelers submits the curriculum vitaes of the following individuals for the Court's consideration:

- **Jose "Tony" Ramirez**, AIC, Professional Claims Services, El Paso, Texas. Mr. Ramirez is a licensed insurance adjuster and roof inspector with more than three decades of experience handling storm-related insurance claims. Mr. Ramirez has been involved with more than 1,000 appraisals, where he has served as an

appraiser for the insured and the insurer and has served as umpire for hundreds of claims. Mr. Ramirez's CV is attached hereto as Exhibit 1.

- **Pat Duggan**, CPCU, San Antonio, Texas. Mr. Duggan received a Bachelor of Science in Business and is a licensed insurance adjuster with more than thirty years' experience handling commercial storms and developing accurate scopes of damage and complex repair estimates. Mr. Duggan's CV is attached hereto as Exhibit 2.

- **Stephen Yungblut.** Dallas, Texas. Mr. Yungblut is an attorney whose practice has been dedicated to construction law and alternative dispute resolution of construction disputes for decades. Mr. Yungblut has previously represented contractors, owners, engineering companies, and others and has served as an umpire in appraisal matters. Mr. Yungblut's CV is attached hereto as Exhibit 3.

6.     These individuals have all confirmed they are available and willing to serve as umpire in this appraisal and have extensive experience pertinent to assessing roof damage and estimating the cost of repair and replacement of the damaged roof components at issue. Travelers believes each of these individuals have applicable knowledge and experience serving as umpires which will make them particularly well qualified to serve as the umpire for this property insurance claim and respectfully asks this Court to appoint one of them as appraisal umpire.

7.     To the extent the Court would prefer to appoint an individual not previously considered by either side, Travelers offers the following additional individuals for the Court's consideration:

- Brett Lochridge. Unified Building Sciences, Dallas, Texas. Mr. Lochridge has a Bachelor of Science in Civil Engineering and his Juris Doctorate. Mr. Lochridge

has decades of experience in the construction industry where he has performed scope and cost evaluations for large commercial claims. Mr. Lochridge has also served as an insurance appraiser and umpire in appraisal matters. Mr. Lochridge Mr. Lochridge's CV is attached hereto as Exhibit 4.

- Ryan Chancey, Ph.D., P.E. Nelson Forensics, Plano, Texas. Dr. Chancey has his B.S., M.E., and Ph.D. in Civil Engineering, and is a licensed professional engineer in more than thirty states. Dr. Chancey has more than a decade of experience assessing storm-related damage to properties on behalf of property owners, insurance companies, and contractors. His CV is attached hereto as Exhibit 5.

8.      Finally, to the extent Plaintiff asserts any other claims, Defendant denies all and singular the allegations in the Appraisal Petition and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Defendant The Travelers Indemnity Company of America prays that Plaintiff take nothing by this suit, and that Defendant goes hence and recovers costs on its behalf expended.

Respectfully submitted,

*/s/ Wm. Lance Lewis*
WM. LANCE LEWIS
Texas Bar No. 12314560
ALISSA PUCKETT
Texas Bar No. 24056886
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
apuckett@qslwm.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that a true and correct copy of the foregoing pleading has been furnished to Plaintiff's counsel of record, via electronic mail, in accordance with the Texas Rules of Civil Procedure, this 30th day of March 2021 at the address indicated below:

   Shaun W. Hodge
   Hodge Law Firm, PLLC
   Old Galveston Square
   2211 The Strand, Suite 302
   Galveston, Texas 77550
   shodge@hodgefirm.com

         */s/ Wm. Lance Lewis*
         Wm. Lance Lewis /Alissa Puckett

# Jose A. Ramirez

P.O. BOX 3036
PHONE (915) 779-3686 EL PASO, TEXAS 79923
FAX # (915) 779-5227
claims@pcs-elpaso.com

**Jose A. Ramirez, AIC**

Tony Ramirez has been investigating, evaluating and administrating all lines of insurance claims since 1973.  Formerly with Maryland Casualty and Transamerica Insurance Company, he founded Professional Claim Services in 1981.

**Education:**
BBA University of Texas at El Paso – 1973
Associate in Claims (AIC) – Insurance Institute of America
Casualty Claims Law Associate – Insurance Institute of America
Building Damage Estimate Vale Tech Institute
Advanced Property Seminars
Haag Certified Roof Inspector
Fraud Investigation Seminars
Disability or Deception Seminars

**Professional Associations:**
El Paso Claims Association
Texas Claim Association
New Mexico Claim Association
Texas Association of Licensed Investigators

**Licenses:**
Texas  All-lines adjuster #207362
New Mexico  Multi-line Adjuster #1182382
Private Investigator-TDPS  #820563
Roof Inspector - #209911148

**Appraisal Process Experience:**

| | |
|---|---|
| For Carriers | 625 |
| For Policyholders | 203 |
| Umpire | 295 |
| Total | 1132 |

Rev. 1/1/2021

**EXHIBIT 1**

# Patrick J. Duggan, CPCU
## 22708 East Range
## San Antonio, TX  78255
## 210-712-5671
### puggan55@gmail.com

## Summary:

- Thirty plus years progressive experience in both commercial and residential property claims adjusting.  Licensed FEMA flood adjuster.
- Expert in both scoping and writing large, complex property losses involving unique and challenging building re-construction, including ordinance or law issues.
- Experience conducting risk surveys for underwriting and loss control.
- Knowledgeable in the interpretation of complex engineering reports, blueprints and designs.
- A documented history of providing timely and accurate large loss reports, as well as risk surveys.
- Excellent knowledge of the Microsoft Excel, and Xactimate estimating program.
- Extensive experience working with both building consultants and engineers in developing an accurate scope of damages, developing complex repair estimates, and establishing the estimated period of restoration.
- Excellent knowledge of all types lines of insurance coverage.
- Skilled in the determination of the cause of loss of a particular claim, the interpretation of complex policy language and applying the proper coverage to the particular loss circumstances, as well as identifying any policy limitations or exclusions that may apply.
  Documented history of providing outstanding customer service on large, complex claims
- Extensive experience working catastrophes.  Responsible for adjusting and settling large property losses during hurricanes Ike, Katrina, Rita, Super Storm Sandy, Irma, Michael, as well as hurricane Maria in the U.S. Virgin Islands.
- Advanced knowledge of property claims law and its impact on a particular claim's adjustment and their final resolution.

## Experience:

- September 2017 to April 17, 2020:  York Risk Services Group/Sedgwick. Executive General Adjuster
- February 2008 to September 2017:  The Hartford, Hartford, Connecticut. General Adjuster
- September 2005 to February 2008:  Crawford & Company Atlanta, Georgia. Catastrophe Adjuster

EXHIBIT

**2**

- **November 2002 to April 2005:  USAA Insurance, San Antonio, Texas. Staff Field Adjuster**
- **April 1997 to November, 2002:  Farmers Insurance Group, San Antonio, Texas.  Senior Commercial Claims Representative.**
- **June 1988 to April 1997:  CIGNA Property and Casualty, San Antonio, Texas.  Senior Commercial Claims Representative.**
- **February 1987 to June 1988:  Liberty Mutual Insurance Company, San Antonio, Texas.  Claims Adjuster II.**

**<u>Education/Licenses:</u>**
- **Wright State University, Dayton, Ohio**
  **B.S. Business**
  **Major:  Production Operations Management**
  **Minor:  Accounting**
- **Vale National Training Center.  Residential Building Damage Estimating.**
- **Vale National Training Center.  Building Damage Computer Estimatics.**
- **Chartered Property Casualty Underwriter.**
- **AIC 35 and INS 22**
- **FEMA License FCN 009050068. Small and Large Commercial, Condominium, Residential and Mobile Home.**
- **Licensed insurance adjuster in the states of Texas, Louisiana, Oklahoma, Alabama, Mississippi, Florida, and California.**



**Stephen K. Yungblut**

Law Office of Stephen K. Yungblut

P.O. Box 822325

Dallas, Texas 75231

(817) 633-2200

(214) 801-6940 (cell)

steve@pratt-yungblut.com

*Practice Concentration & Experience*

Mr. Yungblut=s practice focuses on construction law, an alternative dispute resolution., I have served as a mediator/ arbitrator in approximately 1,500 construction disputes. He has experience in the representation of contractors, owners, engineers, and sureties in a variety of domestic and international construction disputes. Having undergone extensive training in Alternative Dispute Resolution, he also serves as an arbitrator and mediator for construction disputes, including cases administered by the American Arbitration Association. Prior to entering private practice in 1978, he worked as a deputy county attorney where he prosecuted misdemeanor and felony criminal matters. Since 1982, approximately 95% of his practice has centered around construction disputes.    I have served as an umpire in approximately 10 disputes, I have served on three Dispute Boards

*Education*

University of Nebraska (J.D., 1972)

University of Nebraska (B.S., 1970)

*Licenses & Admissions*

Northern, Southern, Eastern and Western Districts of Texas; Court of Appeals for the Fifth Circuit; Licensed to practice in Texas and Nebraska (inactive)

*Professional Affiliations*

Dallas Bar Association (Construction Law Section), Texas State Bar Association (Construction and ADR Section); American Arbitration Association Construction Panel; American Bar Association (Forum on Construction Industry); Texas State Bar Fellow Nebraska State Bar Fellow; American Bar Association Fellow.

*Publications & Presentations*

Arbitration Panel Discussion - State Bar Construction Section (2010) (2012) and (2013)

*Economic Loss* - State Bar Construction Section (2006).

*Mediation.*    Dallas Bar Association - Construction Law Section (2006).

*Mediation & Arbitration.*    Arkansas State Bar Construction Section (2005).

*The Economic Loss Rule -Update*. Dallas Bar Association - Construction Law Section (2003)

**EXHIBIT 3**

*Mediation, The Reality Check.*    The Dallas and Fort Worth

Contractor (Summer 2000).

*Mediation Update.*    American Arbitration Association (2000).

*Arbitration Update.*    Dallas Bar Association Construction

Section (2000).

*Design Build Construction.*    Texas Design Build Institute

(1999).

*Arbitrator Update.*    American Arbitration Association

(1998)

*Arbitration Update.* Dallas Bar Association - Construction Law

Section (1995).

*Killer Clauses in Your Contract.* The Associated General

Contractors of America, 76th Annual Convention, Construction

Exposition (1995).

*The Economic Loss Rule.* Dallas Bar Association -

Construction Law Section (1994).

*Recent Developments in Arbitration.* American Arbitration

Association (1994).

*Economic Loss Rule.* Fluor Daniel Legal Conference (1993).

*Mediation.* American Arbitration Association (1993).

*Specific Contract Clauses.* Paper presented during seminar

sponsored by the Kellogg Corporation (March, 1991)


**Alternative Dispute Resolution Training**

Yearly training on line with the AAA.

AAA Two-Day Advanced Arbitration Training, 3/02; AAA Dispute

Resolution Training, Orlando, Florida, 11/98; AAA Two-Day

Advanced Construction Industry Mediator Training, Dallas, 5/98;

AAA Construction Mediator Training, New Orleans, 5/12 - 5/14/97;

AAA Construction Industry Arbitrator Training Workshop, Dallas,

5/8/97; AAA Fundamentals of the Arbitration Process, Dallas 5/97;

AAA Advanced Arbitrator Training, Dallas, 12/90; AAA Basic

Arbitrator Training, Dallas, 11/90; Mediation Training sponsored by

Fort Worth District Court Settlement Day Program.

**Teaching Experience**

Part-time, Undergraduate Business Law, University of Nebraska

Business School, 1976-1982; Business Law, University of Nebraska

Executive MBA Program.

**Honors**

Texas Super Lawyer 2005- 2020; Recognized by Chambers

2006-2020.    Recognized Best 2013-2020

## PROFESSIONAL RESUME

## Brett A. Lochridge
President



Mr. Lochridge has been involved in various aspects of the construction industry throughout his life.  He has performed supervisory duties as well as becoming directly involved in new construction and remodeling/restoring of commercial and residential structures.

In the consulting area, Mr. Lochridge has performed scope and cost evaluations ranging from hundreds to millions of dollars in damage. These duties have often involved the evaluation of market values and replacement costs, the identification of design or construction deficiencies, and the auditing of claimed reconstruction costs.

Mr. Lochridge has performed Insurance Appraisals as an appointed appraiser and has served as mutually agreed umpire in such matters.

Mr. Lochridge regularly uses and is proficient in specialized testing procedures such as infrared thermography,  impedance meters and inductance locators.

### EDUCATION:
1992 Texas A&M University,
  B.S. Civil Engineering
  Structural & Environmental Emphasis

1995 The University of Texas
  School of Law, J.D.

### LICENSES/AFFILIATIONS/CERTIFICATIONS:
1995 State Bar of Texas, Attorney
1995 Certified Mediator
2003 Level I Themographer
2003 Certified Moisture Analyst
2005 Texas Mold Assessment Consultant
2009 LEED AP

American Society of Civil Engineers,
Construction Specification Institute,
Exterior Design Institute,
State Bar of Texas,
Green Building Council

- ♦ CASUALTY LOSS SCOPE AND COST ANALYSIS
- ♦ APPRAISALS AND ARBITRATIONS
- ♦ REPLACEMENT COST VALUATIONS
- ♦ INFRARED SERVICES
- ♦ PROJECT AUDITING
- ♦ DESIGN SPECIFICATIONS, QUALITY CONTROL AND PROJECT MANAGEMENT
- ♦ CONTENTS LOSS APPRAISALS
- ♦ TIME ELEMENT EVALUATIONS
- ♦ CONSTRUCTION COST ANALYSIS
- ♦ EXPERT WITNESS



EXHIBIT
**4**

Internet:  www.unifiedgroup.com  Email: brett@unifiedgroup.com

209 East Greenbriar Lane  •  Dallas, Texas 75203  •  (214) 942-0385  •  Fax (214) 942-4363



209 East Greenbriar Lane

Dallas, Texas 75203

ofc 214.942.0385

fax 214.942.4363

www.unifiedgroup.com

_____

CONSTRUCTION &
PROPERTY CONSULTANTS

CASUALTY DAMAGE
& COST ANALYSIS

PROJECT MANAGEMENT

INFRA-RED TESTING

CONSTRUCTION DELAY
& SCHEDULE ANALYSIS

LOSS APPRAISALS

BUILDING ENVELOPE
EVALUATIONS

ARBITRATION

_____

## CURRICULUM VITAE

# BRETT A. LOCHRIDGE
### PRESIDENT

**CURRENT BUSINESS ADDRESS:**

**209 E. Greenbriar Lane**
**Dallas, TX 75203**

**BIRTHPLACE:**       **DALLAS, TEXAS**

**EDUCATION:**

**1988   Lloyd V. Berkner High School             Richardson, Texas**
**H.S. Diploma**

National Honor Society
Advanced Placement Graduate

**1992   Texas A&M University              College Station, Texas**
**Bachelor of Science, Civil Engineering**

Top 10% of class
Structural and Environmental Emphases

Chi Epsilon, National Civil Engineering Honor Society
Chevron Academic Achievement Scholarship
Distinguished Student Award
Clark Foundation Academic Achievement Scholarship
Student Member, American Society of Civil Engineers

**1995   The University of Texas School of Law              Austin, Texas**
**Doctor of Jurisprudence (J.D.)**

Editor-In-Chief of *Texas Environmental Law Journal* (1994-1995)
Technical Editor, *Texas Environmental Law Journal* (1993-1994)

**PRESENTATIONS / LICENSES / CERTIFICATIONS:**

"What the Hail?" Presenter, Panel of Experts, Dallas, Texas, March 2014, 2016, 2018

IICRC Fire and Smoke Restoration (FSRT) Technician, 2020

IICRC Odor Control (OCT) Technician, 2020

TRI (Tile Roof Institute) Installation Certification, 2019

Level I Infrared Thermographer, Advanced Infrared Resources, 2003

Certified EIFS Third Party Inspector / Moisture Analyst, Exterior Design Institute, 2003

Licensed Mold Assessment Consultant / Texas Department of State
 Health Services July 2005–July 2007

Xactimate 25 Level 1 Certification, May 2011
Xactimate 25 Level 2 Certification, May 2011
Xactimate 25 Level 3 Certification "Subject Matter Expert" Designation, May 2011

California Earthquake Accreditation, July 2009

LEED Accredited Professional (US Green Building Council), June 2009

CertainTeed Master Shingle Applicator, June 2010

Admitted State Bar of Texas, 1995
Admitted US District Court, Northern District of Texas, 1999
Certified Mediator, The University of Texas School of Law, 1995

**TRADE ORGANIZATIONS / AFFILIATIONS:**


Construction Specifications Institute (CSI)


Exterior Design Institute (EDI)


American Society of Civil Engineers (ASCE)


Chi Epsilon Civil Engineering Honor Society



U.S. Green Building Council

Construction Law Sections SBOT, DBA

2

**WORK EXPERIENCE:**

| September 1995 - Present | **Unified Building Sciences, Inc.**<br>Associate Consultant 1995-1996<br>Vice President 1996-1998<br>President 1998-Present | **Dallas, Texas** |
|---|---|---|

**Summer 1994**   **Law Offices of Steven H. Beadles**   **Irving, Texas**
Summer Law Clerk

**Summer 1993**   **Knox Beadles & Johnston**   **Irving, Texas**
Summer Law Clerk

**Summer 1992**   **Unified Building Sciences, Inc.**   **Dallas, Texas**
Consultant Intern -- Assisted in the evaluation of damaged buildings and structures including measuring, diagramming, and preparing estimates of the cost of repairs or replacement.

**Summer 1990**   **Arredondo Bruns & Associates**   **Dallas, Texas**
Engineering Intern -- Worked full-time on Dallas Area Rapid Transit Light Rail System.  Researched plans and drawings from city archives.  Coordinated project drawings and control system.  Revised and converted project specifications from prior DART project.

**Summers 1989**   **Pro-Tech General Contractors, Inc.**   **Dallas, Texas**
Estimator -- Assisted in the evaluation of damaged buildings and structures including measuring, diagramming, and preparing estimates of the cost of repairs or replacement.

**Summers 1986-1988**   **Unified Building Sciences, Inc.**   **Dallas, Texas**
Consultant Intern -- Assisted in the evaluation of damaged buildings and structures including measuring, diagramming, and preparing estimates of the cost of repairs or replacement.

**Summers 1984-1985**   **Excel Plumbing Heating & Air, Inc.**   **Dallas, Texas**
Journeyman's Assistant -- performed and assisted in the installation and repair of residential and commercial HVAC and plumbing systems.

**Summers 1982-1983**   **J.O. Lochridge General Contractors, Inc.**   **Dallas, Texas**
Carpenter's Assistant -- performed and assisted in construction activities involving the restoration of damaged buildings and structures.

3



# N E L S O N
### F O R E N S I C S

## RYAN CHANCEY, Ph.D., P.E.
*President*

rchancey@nelsonforensics.com | 469-429-9000
2740 Dallas Parkway, Suite 220
Plano, Texas 75093

## EDUCATION

▸ **Ph.D. in Civil Engineering (Structural Engineering and Materials Science)**
The University of Texas at Austin, 2008

▸ **M.E. in Civil Engineering**
University of Florida, 2005

▸ **B.S. in Civil Engineering**
University of Florida, 2003

## AREAS OF EXPERTISE

▸ Structural member, system, and material failure analysis, design review, and remedial design in commercial, industrial, residential, institutional, educational, athletic, healthcare, and agricultural buildings; bridges; and other structures.

▸ Investigation, evaluation, and analysis of reinforced concrete, post-tensioned concrete, prestressed concrete, masonry, steel, and wood structural members and systems.

▸ Assessment of structures and materials that have sustained damage from perils including arson, accidents, collapses, construction defects, design errors, earthquakes, expansive soils, explosions, fire, flood, hail, hurricanes, material failures, subgrade settlement, sinkholes, tornadoes, veneer/cladding failures, water intrusion, windstorms, and biodeterioration.

▸ Chemical and microstructural characterization and behavior/failure analysis of concrete and other cementitious construction materials.

▸ Finite-element modeling and analysis of structural systems, members, and continuum solids.

## EXPERIENCE

Dr. Chancey has evaluated structural system and material failures for hundreds of facilities which have been subject to a wide range of perils. He has provided investigative solutions to an array of client types, including property owners, insurance carriers, attorneys, and contractors. He has also designed measures to remediate deficiencies in affected facilities.

Dr. Chancey has delivered dozens of presentations pertaining to concrete materials science and structural failures to a wide range of audiences; including university faculty, engineering undergraduate and graduate students, insurance industry representatives, attorneys, and engineering peers.

Dr. Chancey has taught coursework at the University of Florida and has authored numerous peer-reviewed publications, including a chapter in a respected textbook of nanophysics. Dr. Chancey has provided expert testimony in deposition, mediation, arbitration, and trial.

**EXHIBIT**
**5**

## CAREER HIGHLIGHTS

▶ Immediate deployment for post-disaster response to EF-5 tornadoes in Joplin, Missouri and Moore, Oklahoma and EF-4 tornado in Vilonia, Arkansas; including structural safety assessment and evaluation of structural damage extent to numerous commercial and educational facilities;

▶ Diagnosis of design and construction deficiencies in the Allen Eagle Stadium in Allen, Texas; including development of repair and strengthening solutions;

▶ Investigation and 3-dimensional, nonlinear collapse analysis of the 90,000 s.f. Dallas Cowboys Practice Facility, including finite element continuum modeling of failed structural connections;

▶ Evaluation of the condition of constructed components and site features of a 1,500 acre multi-use motorsports and entertainment facility located in Austin, Texas for damage caused by a multitude of perils; including wind, rain, flooding, and expansive soils;

▶ Analysis of the collapse under snow loads of a 595' long, 196' wide, and 89' tall steel truss barrel-vault structure in Broceni, Latvia;

▶ Evaluation of high-rise buildings in New Orleans, Louisiana for differential settlement related to nearby subterranean tunneling and dewatering;

▶ Evaluation of the El Centro College in Dallas, Texas following bomb detonation during law enforcement activity;

▶ Investigation of the extent and cause(s) of cracking in reinforced concrete walls of an approximately 600' long x 70' wide x 25' high filter basin complex at a municipal water treatment facility in North Texas;

▶ Analysis of a collapsed 10,000 s.f. cold-formed steel rack storage system, including 3-dimensional, nonlinear stability analysis;

▶ Investigation and analysis of multiple buckling, bulging, and/or partially collapsed steel and concrete silos for grain and pulp;

▶ Investigation of dozens of roof collapses at restaurant, retail, and manufacturing facilities caused by rain or snow;

▶ Evaluation of scores of buildings damaged by windstorm, tornado, or tropical cyclone;

▶ Investigation of a hotel balcony collapse which resulted in personal injury;

▶ Evaluation of cracking of concrete floors in retail and distribution facilities;

▶ Evaluation of foundation movement at commercial, residential, educational, healthcare, and industrial buildings subject to subgrade plumbing failures;

▶ Structural evaluation of damage to a reinforced concrete parking garage caused by design defects;

▶ Assessment of numerous wood-framed multi-family structures for structural deficiencies caused by improperly designed or constructed building envelopes;

▶ Evaluation of the design of steel joists used in retail and distribution facilities;

▶ Investigation of fatigue cracking of trussed loading cranes at a port facility;

▶ Investigation of the cause of a bar-grating failure at a theater catwalk which resulted in a fatality;

▶ Investigation of unusual cracking at a post-tensioned transfer girder in a parking garage under construction;

▶ Evaluation of hundreds of structure foundations subject to expansive subgrade strata and differential foundation movement; including government, manufacturing, commercial, agricultural, healthcare, and residential buildings;

▶ Evaluation of commercial and residential buildings for damage resulting from sinkhole activity;

▶ Investigation of the collapse of a tilt-wall building under construction;

▶ Evaluation of the cause of damage to exterior flatwork and paving at dozens of industrial and commercial facilities;

▶ Structural evaluation of manufacturing and healthcare facilities following earthquakes, including development of construction documents for repairs;

▶ Investigation of differential foundation movement at a distribution warehouse in Moscow, Russia caused by subway construction;

▶ Investigation of concrete formwork collapse at a coastal high rise, which resulted in a fatality;

▶ Investigation of numerous floor covering failures at medical, manufacturing, commercial, and residential buildings;

▶ Evaluation of concrete moisture conditions in commercial and residential high-rise structures following hurricane and flood events;

▶ Evaluation of structural damage to multiple pulp and paper manufacturing facilities following fire events;

▶ Nonlinear analysis of the collapse of a multi-span highway bridge;

▶ Investigation of veneer failures at multi-story buildings in urban areas;



## CAREER HIGHLIGHTS CONTINUED

- Investigation and collapse analysis of an industrial aggregate conveyor system subjected to high wind loads;
- Wind/structure interaction analysis of an overturned metal trussed tower section, which caused a fatality;
- Evaluation of reinforced concrete liquid containment walls, including containment for hazardous materials;
- Structural evaluation of fire damage to a lipid-fueled, long-duration fire at a food-processing facility;
- Structural evaluation of damage to residential, commercial, and industrial facilities and places of worship subject to accidental and arson-induced fire;
- Failure analysis of mechanically stabilized earth (MSE), segmental, gabion, and reinforced concrete retaining walls;
- Evaluation of discoloration of concrete masonry unit (CMU) walls in a newly-constructed natatorium;
- Evaluation of the design and construction of large compressor and generator foundations at petrochemical and power-generating facilities;
- Structural evaluation of commercial, industrial, and residential buildings subjected to blast, vibrations, and heat resulting from petrochemical and natural gas explosions;
- Evaluation, structural analysis, and emergency remedial design of an adult-care facility exhibiting severe wood biodeterioration and overstress;
- Compositional and microstructural analysis of failures of portland cement and polymer-modified concrete materials;
- Correlation of chemical and microstructural material properties to physical behavior of cement-based composites (In collaboration with the National Institute for Standards and Technology (NIST));
- Molecular dynamic simulations of nano-scale carbon systems;
- Research applying full-scale experimental methods to quantify nearsurface tropical cyclone wind behavior and the interaction of same with residential structures;
- Research investigating appropriate level of design precision in structural engineering applications.

## INDIVIDUAL LICENSURE

Licensed Professional Engineer in the States of Alabama, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Wisconsin, and Wyoming; the District of Columbia; and the United States Virgin Islands.

- Registration with the National Council of Examiners for Engineering and Surveying (NCEES).
- Registered with the California Emergency Management Agency's (CalEMA) Safety Assessment Program (SAP).

*State licenses, registrations and/or certifications listed on this resume apply only to this professional as an individual. Nelson Forensics, LLC, Nelson Architectural Engineers, Inc., Nelson Forensic Architects, PLLC, Nelson Forensic Engineers, Inc., Acute Engineering, Inc., and their subsidiaries or assigns offer firm professional services only in states where they are authorized. No offer of firm services is made in states where the aforementioned entities are not authorized or registered.*

## PROFESSIONAL MEMBERSHIPS AND ACTIVITIES

- Member of the American Society of Civil Engineers (ASCE)
- Member of the Structural Engineers Association of Texas (SEAoT)
- Associate Chair for Finance and Facilities ASCE Southeast Region Conference, 2005-2006
- Member of the American Concrete Institute (ACI)
- Member of the Tau Beta Pi Engineering National Honor Society
- Member of the Golden Key National Honor Society
- National Science Foundation Graduate Research Fellow
- Fulbright Fellow (Denmark), U.S. Department of State
- Bruton Prestigious Fellowship Award, The University of Texas at Austin

## PROFESSIONAL MEMBERSHIPS AND ACTIVITIES CONTINUED

▸ College of Engineering Outstanding Service Award, University of Florida

▸ Presidential Recognition Award for Outstanding Achievement and Contribution to the University of Florida

▸ Coordinator, SECME (Mentorship program for disadvantaged youth): 2003-2005

## SEMINARS/PROFESSIONAL LECTURES

▸ *I will Survive! Overcoming Daubert Challenges*, Presented at the American Bar Association Insurance Coverage Litigation Committee Conference; Tuscon, Arizona; March 2019.

▸ *Fundamentals of Forensic Engineering*, Presented at Brookhaven College; Farmers Branch, Texas; April 2018.

▸ *I will Survive! Overcoming Daubert Challenges*, Presented at the American Bar Association Tort Trial & Insurance Practice Section Property Insurance Law Spring Conference; Nashville, Tennessee; March 2018.

▸ *Fundamentals of Forensic Engineering*, Presented at Brookhaven College; Farmers Branch, Texas; November 2017.

▸ *Investigation of a Structural Collapse by the Scientific Method*, Presented at the Tennessee Association of Construction Counsel Annual Meeting; Nashville, Tennessee; November 2017.

▸ *Investigation of a Structural Collapse by the Scientific Method*, Presented at the 8th Annual Project Management Symposium at Vanderbilt University; Nashville, Tennessee; March 2017.

▸ *Investigation of the Collapse of the Dallas Cowboys Practice Facility,* Presented at the Worley Claims Conference, Louisville, Kentucky; January 2017.

▸ *Engineering Investigations of Common Perils* and *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented to FM Global; Frisco, Texas; August 2016.

▸ *Engineering Investigations of Common Perils* and *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented to The University of Texas at Austin, November 2016.

▸ *Our Building Isn't All It's Cracked Up to Be - Investigation of a Building That Was Indeed All Cracked Up: The Allen Eagle Stadium*, Presented to The University of Texas at Austin Center for Lifelong Engineering Education, February 2016.

▸ *Investigation of a Structural Collapse by the Scientific Method*,  Presented to the Southern Loss Association; Atlanta, Georgia; May 2015.

▸ *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented to The Hartford Insurance; Dallas, Texas; October 2014.

▸ *Mechanisms of Fire Damage to Structural Materials*, Presented to the Southern Loss Association; Atlanta, Georgia; May 2014.

▸ *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented at the University of Texas at Austin Center for Lifelong Engineering Education Forensics Symposium, February 2014.

▸ *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented to Woods & Aitken, LLP; Lincoln, Nebraska, November 2013.

▸ *Investigation of the Collapse of the Dallas Cowboys Practice Facility*, Presented to the Texas Association of Defense Counsel; Lincoln, Nebraska, November 2013.

▸ *Fire Damage to Structural Materials and Engineering Investigations of Common Perils*®, Presented to Shelter Insurance; Denver, Colorado, April 2013.

▸ *Methodologies in Roof Hail Distress Investigations and Fire Damage to Structural Materials*, Presented to Safeco and Liberty Mutual Insurance; Golden, Colorado, April 2013.

▸ *2011 Tornadoes*, Presented at The University of Texas at Austin Structural Engineering Education Reunion (STEER), Austin, Texas, April 2013.

▸ *Engineering Investigations of Common Perils*®,  Presented to Shelter Insurance, Oklahoma City, Oklahoma, March 2013.

▸ *Fire Damage to Structural Materials*, Presented to Shelter Insurance, Oklahoma City, Oklahoma, March 2013.

▸ *Fire Damage to Structural Materials*, Presented to Federated Insurance, Bedford, Texas, March 2013.

▸ *Fire Damage to Concrete Materials*, Webinar, February 2013.

▸ *Fire Damage to Structural Materials*, Presented at the University of Texas at Austin Center for Lifelong Engineering Education Forensics Symposium, February 2013.

## SEMINARS/PROFESSIONAL LECTURES CONTINUED

- *Fire Damage to Structural Materials*, Presented to Texas Windstorm Insurance Association, Austin, Texas, January 2013.

- *Engineering Investigations of Common Perils*®, Presented at The University of Texas at Austin, Austin, Texas, August 2012.

- *Engineering Investigations of Common Perils*®, Presented at Oklahoma State University, Stillwater, Oklahoma, October 2011.

- *Engineering Investigations of Common Perils*®, Presented at The University of Texas at Austin, Austin, Texas, September 2011.

- *Wind and Waves: Scenes from Hurricane Investigations*, Presented at The NOMAD Adjusting Conference, Dallas, Texas, July 2011.

- *Case Study of a Commercial Building Foundation Failure*, Presented at the Foundation Performance Association, Houston, Texas, November, 2010.

- *Quantitative Characterization of Fly Ash Reactivity and Geopolymer Reaction Products*, Presented with K. Gustashaw, P. Stutzman, and M. Juenger at the American Concrete Institute Fall Convention, Pittsburgh, Pennsylvania, October 2010.

- *Engineering Investigations of Common Perils*®, Presented at The University of Texas at Austin, Austin, Texas, September 2010.

- *Engineering Investigations of Common Perils*®, Presented at The University of Texas at Austin, Austin, Texas, November 2009.

- *Engineering Investigations of Common Perils*®, Presented at The University of Wyoming, Laramie, Wyoming, September 2009.

- *Built-up Column Stability in Wood Construction*, Presented with S. Verhulst, D. Fowler, D. Ahuja at the ASCE Texas Section Fall Proceedings, 2008.

- *Characterization of Crystalline and Amorphous Phases and Respective Reactivities in a Class F Fly Ash, Doctoral Dissertation Defense*, Presented at The University of Texas at Austin, May 2008.

- *Case Study of the Failure of a Wood-Framed Condominium Complex*, Presented at The University of Texas at Austin, October 2007.

- *A Synergistic Method for Identification and Quantification of Crystalline and Amorphous Mineral Phases in a Class F Fly Ash*, Presented at American Concrete Institute Fall Convention, Fajardo, Puerto Rico, October 2007.

- *A Synergistic Method for Identification and Quantification of Crystalline and Amorphous Mineral Phases in a Class F Fly Ash*, Presented at American Ceramic Society Annual Convention, Detroit, Michigan, September 2007.

- *Microanalysis Methods for Cementitious Materials: X-Ray Powder Diffraction*, Presented at the University of Texas at Austin, April 2007.

- *Microanalysis Methods for Cementitious Materials: Scanning Electron Microscopy and Transmission Electron Microscopy*, Presented at the University of Texas at Austin, March 2007.

- *Fragmentation of Fullerenes*, Presented to the Department of Chemistry, University of Namur, Belgium, June 2003.

- *Breaking Bucky Balls*, Presented at the 42nd Sanibel Symposium, St. Augustine, Florida, March 2002.

## PUBLICATIONS

- *Causation of Near-Surface ASR at Concrete Slabs-On-Grade*, Ryan D. Kalina, M.S., P.E., M.ASCE, Ryan T. Chancey, Ph.D., P.E., M. ASCE, and Stewart M. Verhulst, M.S., P.E., M.ASCE, Proceedings of the Forensic Engineering 8th Congress, 2018, Austin, TX.

- *Failure Analysis of a Reinforced Concrete Silo*, T. Ebisch, M.S., P.E. and R. Chancey, Ph.D., P.E., Proceedings of the Forensic Engineering 8th Congress, 2018, Austin, TX.

- *Avoiding Poindexter: Effective Selection of Experts for Defense of Construction Cases*, Ryan T. Chancey, Georgia Defense Lawyer, pp. 27, Winter 2016.

- Chancey, R.T., Kerry S. Lee, Matthew D. Oestrike, Stewart Verhulst, Bart Barrett, and Deepak Ahuja. Field Investigations. *In Engineering Investigations of Hurricane Damage: Wind versus Water*, ed. D.B. Peraza, W.L. Coulbourne, and M. Griffith. American Society of Civil Engineers. 2014.

- *An examination of the reactivity of fly ash in cementitious pore solutions*, K.L. Aughenbaugh with Ryan T. Chancey, P. Stutzman, M. C. Juenger, and D. W. Fowler, Materials and Structures, 46, pp. 869-880, May 2013.

- *A Case Study on the Collapse of Industrial Storage Racks*, James P. Plantes, B.S., with Deepak Ahuja, M.S., P.E., M.ASCE, and Ryan T. Chancey, Ph.D., P.E., M.ASCE, Proceedings of the Sixth Congress on Forensic Engineering, San Francisco, California, October 2012.

- Albert, V.V., Ryan T. Chancey, Lene B. Oddershede, Frank E. Harris, and John R. Sabin. Fragmentation of Fullerenes. In *Handbook of Nanophysics*, ed. K.D. Sattler. CRC Press, 2011.

- *Comprehensive Phase Characterization of a Class F Fly Ash*, Ryan T. Chancey, P. Stutzman, M. C.G. Juenger, D.W. Fowler, Cem. Concr. Res. 40, pp. 146-156, 2010.

**PUBLICATIONS CONTINUED**

▸ *Built-up Column Stability in Wood Construction*, Ryan T. Chancey, Ph.D., M.ASCE with S. Verhulst, M.S., P.E., M.ASCE, D. Fowler, Ph.D., P.E., F. ASCE and D. Ahuja, M.S., P.E., M.ASCE. Proceedings of the Fifth Congress on Forensic Engineering, ed. S. Chen et. Al, pp. 143-152 Washington, D.C., November 2009.

▸ *The Physical and Chemical Characteristics of the Shell of Air-Entrained Bubbles in Cement Paste*, M.T. Ley with Ryan T. Chancey, M.G. Juenger and K.J. Folliard, Cem. Concr. Res. 39, pp. 417-425, 2009.

▸ *Built-up Column Stability in Wood Construction*, Ryan T. Chancey, Ph.D., M.ASCE with S. Verhulst, M.S., P.E., M.ASCE, D. Fowler, Ph.D., P.E., F.ASCE and D. Ahuja, M.S., P.E., M.ASCE, ASCE Texas Section Fall Proceedings, 2008.

▸ *Characterization of Crystalline and Amorphous Phases and Respective Reactivities in a Class F Fly Ash*, Ph.D. Dissertation, The University of Texas at Austin, May 2008.

▸ *Justifiable precision and accuracy in structural engineering calculations: in search of a little less precision and supposed accuracy*, Ryan T. Chancey with T. Sputo, E. Minchin and J. Turner, ASCE Practice Periodical on Structural Design and Construction, Vol. 10, No.3, pp. 154-160, 2005.

▸ *Fragmentation of Fullerenes*, Ryan T. Chancey, University of Florida Journal of Undergraduate Research, Award: Best Quantitative Paper, 2004.

▸ *Fragmentering af Fullerener*, (In Danish) L.B. Oddershede with R. Chancey, F. Harris and J. Sabin, KVANT No. 2, 3, 2003.

▸ *Fragmentation of Fullerenes*, Ryan T. Chancey with L. Oddershede, F. Harris and J. Sabin, Phys. Rev. A, 67, 043203, 2003 (also published in: Virtual Journal of Nanoscale Science and Technology 7/18, 2003).

*Revised 052620*

